UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| APRIL DIANE McPETERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:18-CV-39 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| TONY C. PARKER, in his individual | ) | |
| capacity and in his official capacity | ) | Magistrate Judge H. Bruce Guyton |
| as Commissioner of the Tennessee | ) | |
| Department of Correction, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# M E M O R A N D U M

Before the Court is a motion to dismiss filed by five of the six Defendants in this action, each of whom is an officer or employee of the Tennessee Department of Correction (the "TDOC"): Tony Parker, the TDOC Commissioner ("Commissioner Parker"); Alisha Shoates James, the Assistant Commissioner for Community Supervision ("Assistant Commissioner James"); David Lane, the Correctional Administrator for the East Division of Probation ("Administrator Lane"); Paul C. Gore, a supervisor within the Division of Probation and Parole ("Officer Gore"); and Wade A. Adcock, another supervisor within the Division of Probation and Parole ("Officer Adcock") (collectively, the "Moving Defendants"). (Doc. 9.) Plaintiff, April Diane McPeters, responded in opposition (Doc. 20), and the Moving Defendants replied (Doc. 22). For the reasons set out below, the Court will **GRANT** the motion to dismiss.

## I.   BACKGROUND[1]

Plaintiff was previously on probation with the state of Tennessee after pleading guilty to food stamp fraud.  At the time of the events giving rise to the Complaint, in late 2016 and early 2017, she had been on probation for approximately five years without incident.

Officer Adcock hired Defendant Bryant Lamont Thomas ("Officer Thomas") as a Probation and Parole Officer for the TDOC in May 2016.  In late 2016, Officer Thomas was assigned to supervise Plaintiff.  Officer Thomas initially used text messages to communicate with Plaintiff regarding matters relevant to her supervision.  After their second in-person meeting in Officer Thomas's office, however, he began to send her informal, conversational text messages.

In February 2017, Officer Thomas told Plaintiff he would be conducting home visits rather than meetings in his office from then on.  After this announcement, Officer Thomas began sending harassing and exploitive text messages to Plaintiff, including inappropriate personal questions and requests for sexually explicit pictures.

Officer Thomas arrived at Plaintiff's home for an ostensible home visit on an unspecified date in 2017.  He was armed and wearing his Probation and Parole Officer badge.  He walked through the house to make sure no one else was there.  He then forced Plaintiff to show him photographs of herself and to delete many of the text messages he had sent her.  With his hand on his firearm, he forced Plaintiff to perform oral sex on him.

---

[1] This summary of the facts accepts all of the factual allegations in Plaintiff's Complaint as true.  *See Gunasekera v. Irvwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Plaintiff reported the rape to two male officers who are not identified by name.[2]  She was subjected to increasingly strict supervision in retaliation for her report.  Plaintiff asked Officer Gore, who was Officer Thomas's supervisor at the time, to assign her to a female Probation Officer, but Officer Gore refused to do so.  The two male officers to whom Plaintiff had made the report performed a surprise home visit and purported to find probable cause for new criminal charges against her.  Neither Officer Gore nor Officer Adcock, who was Officer Thomas's previous supervisor, followed TDOC procedures requiring a formal report and investigation of Officer Thomas's rape of Plaintiff.

Officer Thomas was terminated in 2017 for an unrelated incident.

Plaintiff alleges that the trauma she suffered from the rape and the Moving Defendants' retaliation against her prevented her from maintaining employment or staying off of drugs, which then led to her being incarcerated again.  Plaintiff also alleges that "[m]ultiple complaints of sexual harassment and assault have been lodged by female probationers against male Probation and Parole Officers in the Clinton, Tennessee Probation Field Office and across Tennessee.  Officer Thomas assaulted multiple probationers and/or parolees under his supervision."  (Doc. 1 at 9, ¶ 41.)

Plaintiff filed this action on February 1, 2018.  (Doc. 1.)  She asserts a single cause of action against the Moving Defendants, in their respective individual and official capacities, for violation of her civil rights under 42 U.S.C. § 1983.  She asserts causes of action against Officer

---

[2] The chronology of events following Officer Thomas's rape of Plaintiff is unclear.  The Court has posited the order of events set out in the following paragraph by construing the Complaint in the light most favorable to Plaintiff.  *See Gunasekera*, 551 F.3d at 466.  The exact order of events is not critical to the Court's resolution of the motion, however.

Thomas for violation of her civil rights under 42 U.S.C. § 1983 and for assault and battery.[3]  She also seeks injunctive relief on her civil rights claims against all Defendants, economic and noneconomic damages against all Defendants, and attorney's fees and costs.  Finally, Plaintiff seeks certification of a class action for equitable and injunctive relief on behalf of two classes: (1) the class of all females who have been supervised by the TDOC for probation or parole from February 1, 2017, on, and (2) the class of all females who have had cause to report sexual harassment by a TDOC officer and who remain under TDOC supervision because they are incarcerated, on probation, or on parole.

The Moving Defendants move to dismiss all Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  (Doc. 9.)   Plaintiff has responded (Doc. 20), and the Moving Defendants have replied (Doc. 22).  The Court held a hearing on the motion to dismiss on November 14, 2018.  (Doc. 37.)

## II.     STANDARD OF REVIEW

### A.     Subject-Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1)

When a defendant moves to dismiss for a lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction.  *Davis v. United States*, 499 F.3d 590, 593–94 (6th Cir. 2007).  A Rule 12(b)(1) motion may present either a facial attack, which questions the sufficiency of the pleadings, or a factual attack, which challenges the factual existence of subject-matter jurisdiction.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The Moving

_____

[3] Plaintiff's claims against Officer Thomas are not at issue in this motion to dismiss.

4

Defendants do not specify here, but appear to make a facial attack on the sufficiency of Plaintiff's pleadings as to Plaintiff's standing to bring a claim for injunctive relief. "When reviewing a facial attack, a district court takes the allegations in the complaint as true," though conclusory allegations and legal conclusions will not prevent dismissal. *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007).

### B. Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, a court must accept all of the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept as true bare assertions of legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678. Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

If a party presents matters outside the pleadings in connection with the motion, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

## III.   <u>DISCUSSION</u>

The Moving Defendants seek dismissal of all claims against them, presented in the following, sometimes overlapping, categories: (a) Plaintiff's claims for injunctive relief, on the grounds that she lacks standing to seek such relief; (b) Plaintiff's class-action allegations, on the grounds that she cannot serve as the class representative; (c) Plaintiff's damages claims against them in their official capacities; (d) Plaintiff's claims against them in their individual capacities for (i) their actions or inactions that allowed the rape to take place, (ii) their alleged retaliation after the rape, and (iii) their failure to provide medical care after the rape; and (e) all of Plaintiff's individual-capacity claims against them, based on qualified immunity.

Plaintiff argues that she is asserting one overarching claim under § 1983, not multiple standalone claims. But as a practical matter, the Court can only assess the sufficiency of a § 1983 claim by examining the specific violations alleged against the specific defendants. The seriousness of Plaintiff's allegations does not change this. The Court therefore considers the Moving Defendants' arguments in turn below.

### A.  Plaintiff's Standing to Seek Injunctive Relief

The Moving Defendants move under Rule 12(b)(1) to dismiss all of Plaintiff's injunction claims against them for lack of subject-matter jurisdiction.  They argue Plaintiff does not have standing to seek injunctive relief because she has not shown "a non-speculative threat that [she] will again experience injury as a result of the alleged wrongdoing." (Doc. 10 at 15 (quoting *Werner v. Primax Recoveries, Inc.*, 365 F. App'x 664, 668 (6th Cir. 2010).)  They point out that Officer Thomas is no longer employed by TDOC and Plaintiff is no longer on probation, in that she is currently incarcerated.

Plaintiff responds that an ongoing pattern of abuse against a particular class of targets conveys standing on members of that class to seek injunctive relief.  *See Budget Charters, Inc. v. Pitts*, No. 3:17-cv-722, 2018 WL 1745780, at *5 (M.D. Tenn. Apr. 11, 2018).  She argues that she "has identified an ongoing pattern of abuse directed against a particular class of targets," namely sexual harassment and assaults of female Tennessee probationers by their male probation officers. (Doc. 20 at 12 (citing Doc. 1 at 9, ¶ 41).)

Federal courts have subject-matter jurisdiction over "Cases" and "Controversies."  U.S. Const. art. III, § 2.  For a case or controversy to exist, a plaintiff must meet the "irreducible constitutional minimum" requirements of standing.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60 (1992).  Those requirements are: (1) an injury in fact; (2) a causal link between the injury and the defendant's action or inaction; and (3) a likelihood that a decision in the plaintiff's favor will redress the injury.  *Id.* at 560.  An injury in fact must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical."  *Id.* (internal quotation marks omitted).

A plaintiff seeking injunctive relief "must show actual present harm or a significant possibility of future harm." *Blakely v. United States*, 276 F.3d 853, 873 (6th Cir. 2002) (quoting *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 832 (6th Cir. 2001)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–10 (1983) (federal courts lack jurisdiction over claim for injunctive relief where there is no real or immediate threat of future harm). Mere allegations that a plaintiff may suffer possible injury in the future are not sufficient to satisfy Article III's standing requirement. *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Previous harm from illegal conduct "might be 'evidence bearing on whether there is a real and immediate threat of repeated injury,'" but "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell*, 252 F.3d at 833 (quoting *Lyons*, 461 U.S. at 102). For example, where a plaintiff alleged police had previously placed him in an illegal choke hold and sought an injunction to prevent it from happening again, the Supreme Court held the plaintiff had not established a real and immediate threat of being subjected to such harm again. *Lyons*, 461 U.S. at 105. Rather,

> [i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although Count V alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy.

*Id.* at 105–06.

The type of evidence required to satisfy a plaintiff's burden to establish subject-matter jurisdiction varies depending on the stage of the litigation. *Lujan*, 504 U.S. at 561. "At the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of jurisdiction. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Plaintiff has failed to allege sufficient facts to demonstrate standing to seek injunctive relief. The Complaint is devoid of allegations of a likelihood of future harm to herself. She alleges injury from a past violation of her rights—Officer Thomas's sexual harassment and rape of her, followed by alleged retaliation and failure to aid by Moving Defendants—but she never alleges a likelihood of future harm. In her response to the Moving Defendants' motion, she does assert it is likely she will return from incarceration to probation or parole.[4] (Doc. 20 at 13.) She stops short, however, of asserting that she is likely to suffer sexual harassment, assault, or retaliation by a probation officer if she is returned to probation or parole. Instead, she relies on *Budget Charters*, arguing she is within the particular, limited class of targets of an ongoing pattern of abuse by male probation officers. (Doc. 20 at 12–13.)

In *Budget Charters*, the district court "look[ed] at the substance of the plaintiff's allegations to assess 'the *reality* of the threat of repeated injury.'" *Budget Charters*, 2018 WL 1745780, at *5 (quoting *Lyons*, 461 U.S. at 107 n.8). The plaintiff, a bus company from Philadelphia, alleged there was an ongoing scheme by Tennessee police targeting out-of-state tour buses, and that the plaintiff bus company was continuing to operate tours into the state of Tennessee. The district

---

[4] Plaintiff relies generally on a report she attaches to her response, entitled "Tennessee Felon Population Update, April 2018." (Doc. 20 at 13 (citing Doc. 20-2).) This is a twenty-two page document containing various statistics. Plaintiff does not direct the Court to any specific part of the document, and the Court has not searched the document for potentially relevant information.

court distinguished the "much more specific abuse" and the more limited class of potential targets from the allegations in *Lyons*, 461 U.S. 95, in which the risk of the plaintiff's being a second time subjected to a choke hold by police was significantly more speculative. *Budget Charters*, 2018 WL 1745780, at *6.

Here, Plaintiff's alleged past injury is some evidence of a future risk. Something that has happened once, may, generally speaking, happen again. She has also alleged the existence of "a system in which Probation and Parole Officers abuse their authority to violate the rights of those under their supervision." (Doc. 1 at 13, ¶ 65.) But Plaintiff's Complaint as a whole does not show either actual present harm or a significant possibility of future harm to herself. *See Blakely*, 276 F.3d at 873. While there may be a reasonable possibility that Plaintiff will in future be placed on probation or parole, to say that she would at that time be subjected a second time to sexual harassment, rape, or retaliation by a probation officer is mere speculation. She does not, as in *Budget Charters*, allege the existence of a scheme in which female probationers or parolees are affirmatively targeted for harassment and abuse. She alleges only a "system" in which such abuses may occur, one experience of abuse against herself, and a general allegation of other instances of abuse.[5]

Despite the reasonable possibility of Plaintiff's again being under supervision at some point in time, the allegations in this case are more like those in *Lyons*, where there was only a speculative risk that the plaintiff, among all the citizens of Los Angeles, would again be arrested and placed

---

[5] As discussed below, Plaintiff's general allegation of other reports of abuse provides no information on their respective dates, locations, or recipients, or on the total number of such reports, other than that they are "multiple." *Infra* § III(D)(1)(a) (citing Doc. 1 at 9, ¶ 41).

in a chokehold for no reason, than they are like those in *Budget Charters*, in which the plaintiff was within the relatively small subset of out-of-state tour buses being targeted by an alleged police scheme. Plaintiff's allegations of harm are serious. But they do not show a significant possibility she will suffer future harm at the hands of probation or parole officers. Plaintiff therefore lacks standing to seek injunctive relief, and this Court lacks jurisdiction over her claims for injunctive relief.

### B.      Class Allegations

Defendants argue that because Plaintiff lacks standing to bring a claim for injunctive relief, she cannot serve as class representative. *See Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) (class representative must have personal standing at the start of litigation). Plaintiff does not dispute this legal premise, but argues she has standing to seek injunctive relief, as discussed above. Because the Court concludes Plaintiff lacks standing to seek injunctive relief, she cannot serve as class representative, and the class allegations must be dismissed.

### C.      Damages from Defendants in their Official Capacities

The Moving Defendants ask the Court to dismiss Plaintiff's official-capacity claims against them for damages for failure to state a claim under Rule 12(b)(6). The Moving Defendants assert as grounds their Eleventh Amendment immunity and that § 1983 does not create a cause of action against a state, or an individual acting in his or her official capacity for the state, because a state is not a "person" under § 1983.

Plaintiff concedes the Moving Defendants are correct as a legal matter. She asserts the Moving Defendants have misinterpreted her Complaint as asserting a damages claim against them

in their official capacities.  To the extent her Complaint is unclear, she asks for leave to amend to clarify that she is not seeking damages against any Defendant in an official capacity.

Plaintiff's Complaint does appear to seek damages against the Moving Defendants in their official capacities, in that it does not distinguish between the Defendants' different capacities in her demand.  (Doc. 1 at 20, ¶ 4 (seeking judgment "against Defendants for economic and noneconomic damages")).)  Neither a state nor a state actor in his or her official capacity is a "person" subject to a suit for damages under § 1983.  *Wolfel v. Morris*, 972 F.2d 712, 718–19 (6th Cir. 1992).  An official-capacity action against a state actor seeking prospective relief, such as an injunction, by contrast, is not treated as an action against the state, and a state official sued in an official capacity therefore is a "person" under § 1983 in a suit for injunctive relief.  *Id.* at 719; *see also Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007).  The Court will grant the motion to dismiss as to Plaintiff's claim for damages against the Moving Defendants in their official capacities.

### D.	Plaintiff's Individual-Capacity Claims

The Moving Defendants ask the Court to dismiss Plaintiff's individual-capacity claims against them for failure to state a claim under Rule 12(b)(6).  These portions of the motion are directed towards Plaintiff's claims for damages and injunctive relief.  Because the Court lacks subject-matter jurisdiction of Plaintiff's claims for injunctive relief, *supra* § III(A), the Court will consider the parties' arguments only as to Plaintiff's individual-capacity damages claims.

### 1.	Actions or Inactions Before the Rape

The Moving Defendants ask the Court to dismiss Plaintiff's individual-capacity claims against them on the circumstances that led up to the rape itself, namely the failure to train or

12

supervise Officer Thomas and the failure to establish policies to prevent sexual assault against probationers.[6]

### a.   Failure to Train or Supervise

The Moving Defendants argue they cannot be held liable for any alleged failure to train or supervise Defendant Thomas leading up to the rape.  They argue individual supervisory liability cannot be founded on a mere failure to act; there must be some active participation by the supervisor in unconstitutional behavior.  *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).  Such active participation requires, at a minimum, that the supervising defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct."  *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 99 F.3d 293, 300 (6th Cir. 1999)).  Theories of individual supervisory liability are, in this way, stricter than theories of municipal liability for a failure to train or supervise employees, which may be premised on a failure to act.  *See Essex v. Cty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).  Defendants point out that the Complaint contains no allegation of active participation by Defendants in this case; the Complaint alleges merely that the Defendants failed to "properly hire, train, and supervise" TDOC employees.  (*See* Doc. 1 at 4–5, ¶¶ 2–6.)

---

[6] Plaintiff mentions the Moving Defendants' respective duties "to properly *hire*, train, and supervise" TDOC employees in the "Parties" section of her Complaint.  (Doc. 1 at 4–5, ¶¶ 2–6 (emphasis added).)  She makes no further allegations about what Defendants did wrong in hiring Defendant Thomas, nor does she otherwise mention a negligent hiring claim in her Complaint. Therefore, it appears she is not asserting a negligent hiring claim in this action.

Plaintiff essentially agrees with the law cited by Defendants on this point. She argues, however, that deliberate indifference can also satisfy the requirement for active participation through implicitly authorizing, approving, or knowingly acquiescing in unconstitutional conduct of a subordinate. *See Howard v. Knox Cty., Tenn.*, 695 F. App'x 107, 113 (6th Cir. 2017) (plaintiffs sufficiently alleged defendant's knowledge of teacher's abuse of students such that defendant's inaction could constitute deliberate indifference and support supervisory liability under § 1983). She argues that, as alleged in Paragraph 41 of the Complaint, there have been "[m]ultiple complaints of sexual harassment and assault" in the Clinton office and elsewhere in the state, and that Defendant Thomas has assaulted multiple women under his supervision. (*See* Doc. 1 at 9, ¶ 41.) Plaintiff also attaches to her response an exhibit consisting of media reports about physical and sexual assaults by probation officers on their probationers in the United States. (Doc. 21-1, Pl.'s Ex. A.) Plaintiff argues these widespread reports are sufficient to show deliberate indifference by Defendants. To the extent the consideration of such reports would prevent dismissal of the Complaint, she asks leave to amend in order to allege them.

The Court of Appeals for the Sixth Circuit has explained that deliberate indifference in an individual supervisory liability case

> . . . is a question of proportionality. The court should first take into consideration the information available to the supervisor at the time, and whether the information available to the supervisor showed a strong likelihood that the defendant would engage in similar behavior in the future. . . . Next the court must consider whether, in light of that information, the . . . official's response rises to the level of deliberate indifference.

*Howard*, 695 F. App'x at 113–14 (citations and internal quotation marks omitted). A complaint containing allegations of "numerous examples where parents and students complained to [the

supervisory defendant] about *specific* incidents of abuse" was sufficient to satisfy the first requirement, for example. *Id.* at 114 (emphasis in original).

As the Moving Defendants argue, Plaintiff has not sufficiently alleged supervisory claims against any Defendant in this case. She has alleged no active participation by any Moving Defendant leading up to the rape. In her response, she points to Officer Gore's and Officer Adcock's general duties to train Officer Thomas in their respective roles as his supervisors (Doc. 20 at 2 (citing Doc. 1 at 4–5, ¶¶ 5, 6)), and her Complaint alleges a failure by Commissioner Parker, Assistant Commissioner James, and Administrator Lane to implement policies to prevent sexual misconduct and to report sexual misconduct (Doc. 1 at 9, ¶¶ 43, 44). None of these allegations shows an implicit authorization, approval, or knowing acquiescence in Officer Thomas's rape of Plaintiff.

Turning to Plaintiff's arguments on deliberate indifference as satisfying the requirement for active participation, the Court must consider the information available to each Moving Defendant before the rape and whether it showed a strong likelihood that Officer Thomas would engage in similar behavior in the future. *See Howard*, 695 F. App'x at 113–14. The Court must then consider whether each Moving Defendant's response, or lack thereof, to that information rises to the level of deliberate indifference. *See id.*

The Complaint speaks in generalities of "multiple complaints" in Clinton and across Tennessee. (Doc. 1 at 9, ¶ 41.) There is no information on the specific content of these complaints, the relative number that were made about the Clinton office, or the dates on which the complaints were made. There is also no information on the people to whom they were made, including whether any of the complaints were made to any of the Moving Defendants, or whether any of the

15

Moving Defendants had knowledge of the complaints. This is significantly different from the specific complaints that were alleged to have been made to specific supervisory defendants in deliberate-indifference cases. *See, e.g.*, *Howard*, 695 F. App'x at 114. The Court cannot conclude the information alleged in the Complaint showed a strong likelihood Officer Thomas would engage in similar behavior in the future. Nor have the allegations in the Complaint shown more than a "sheer possibility" that the information referred to in the Complaint was known to any of the Moving Defendants. *See Iqbal*, 556 U.S. at 677–78.

The Complaint also alleges that Officer Thomas himself "assaulted multiple probationers and/or parolees under his supervision." (Doc. 1 at 9, ¶ 41.) This allegation is similarly devoid of specifics. There is no information on the dates of the assaults, the jurisdictions in which they took place, or even that there had been reports of such assaults, let alone whether any of the Moving Defendants had knowledge of those assaults. The allegation about Officer Thomas therefore does not change the degree to which the information available to any of the Moving Defendants indicated a likelihood that Officer Thomas would engage in similar behavior in the future.

Nor would granting Plaintiff leave to amend her Complaint to include the news stories in Exhibit A change the Court's analysis. None of the stories Plaintiff attaches to her response address incidents in the state of Tennessee, let alone the Clinton field office, and none are particular to Officer Thomas. (Doc. 21-1.) They therefore would not strengthen the degree to which the information available to the Moving Defendants indicate a likelihood of such behavior by Officer Thomas in the future, even if Moving Defendants had been aware of the reports in Exhibit A. Because the matters in Exhibit A to Plaintiff's response would make no difference to the Court's

analysis, the Court does not grant Plaintiff leave to amend her Complaint to include them, and does not consider them further in its analysis of the Moving Defendants' motion to dismiss.

Considering the non-specific information and the lack of any allegation of such knowledge by any particular Moving Defendant, the Court concludes that each Moving Defendant's alleged failure to properly train or supervise Officer Thomas does not rise to the level of deliberate indifference.

Plaintiff's reliance on cases involving a failure to train police officers in the use of excessive force are off point. *See, e.g.*, *Coley v. Lucas Cty.*, 799 F.3d 530 (6th Cir. 2015) (sheriff's failure to train and supervise officers in use of excessive force and to investigate allegations of use of excessive force, and false statements during investigation, showed knowing acquiescence in use of excessive force); *see also Peatross*, 818 F.3d 233 (failure to train and supervise in use of excessive force and to investigate allegations of use of excessive force, and attempted coverup, showed knowing acquiescence in use of excessive force). The use of force is a foreseeable part of a police officer's job responsibilities, and courts have frequently recognized the need for training on the degree to which that use is permissible. Plaintiff has pointed to no similar cases involving sexual assault. On the other hand, the Moving Defendants have pointed to a number of cases offering persuasive authority for the proposition that failing to train or establish policies against sexual assault by law enforcement officers does not give rise to liability under § 1983.[7] *See infra* § III(D)(1)(b).

---

[7] These cases also show a greater level of specificity as to the allegations of knowledge by the defendants of prior wrongful acts than the Complaint in this matter provides.

### b. Failure to Establish Policies to Prevent Sexual Assault

The Moving Defendants ask for dismissal of Plaintiff's claims based on a failure to establish or enforce policies against sexual harassment and assault. Defendants point to a number of cases from district courts in the Sixth Circuit, and from courts elsewhere, holding that failing to train or establish policies against sexual assault by law enforcement officers does not give rise to liability under § 1983. *See, e.g.*, *Williams v. City of Detroit*, No. 07-14858, 2009 WL 3059150 (E.D. Mich. Sept. 24, 2009); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996). Plaintiff makes no response to this caselaw. The Moving Defendants are entitled to dismissal of the portion of Plaintiff's claims predicated on Defendants' alleged failure to establish or enforce policies or training to prevent sexual harassment and assault.

### 2. Retaliation After the Rape

The Moving Defendants ask the Court to dismiss the claims against them for retaliation after the rape, arguing the claims are threadbare legal conclusions that lump all of the Defendants together without describing individual action by any of them. Plaintiff alleges that the Moving Defendants collectively provided her with no recourse after the attack (Doc. 1 at 8, ¶ 33); revictimized her (*id.* ¶ 34), in that they subjected her to increasingly strict supervision (*id.*) and "authorized, approved, directed, and/or permitted the Probation and Parole Officers to whom Ms. McPeters had reported the rape to search her home" (*id.* ¶ 37); and failed to investigate or report the rape (*id.* at 9, ¶ 39). Such general allegations against all of a group of defendants collectively are not sufficient to state a claim against any of them. *See, e.g.*, *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (dismissing *Bivens* claim where complaint made only categorical references to defendants).

Plaintiff does allege that Officer Gore, specifically, refused Plaintiff's request for a female probation officer. (Doc. 1 at 8, ¶ 35.) But Plaintiff has offered no authority to show she had a right to be supervised by a female probation officer. The Court cannot conclude that refusing to assign a probation officer of a specific requested gender is a violation of a supervisee's civil rights.

### 3. Failure to Provide Medical Care After the Rape

The Moving Defendants ask the Court to dismiss Plaintiff's claims against them for failing to provide counseling, treatment, and care to her after the rape. Defendants argue they had no duty to provide such care to Plaintiff because she was not in their custody in such a way as to restrain her ability to obtain care for herself. *See Peete v. Metro. Gov't of Nashville & Davidson Cty.*, 486 F.3d 217, 223 (6th Cir. 2007) (state officers' constitutional duty to provide medical care to incarcerated prisoners and those under similar restraint); *Bown v. Vore*, No. 3:07-cv-375, 2007 WL 4224408, at *1 (S.D. Ohio Nov. 27, 2007) (probation officer does not have custody of probationer unless he has made arrest and therefore has no constitutional duty to obtain medical care).

Plaintiff does not dispute the accuracy of the Moving Defendants' legal premise. Instead, she responds that she is not asserting a stand-alone claim for failure to obtain medical care or for any other type of retaliation, but is making those allegations as part of her "over-arching § 1983 claim." (Doc. 20 at 11 n.7.) But the Court can only assess the sufficiency of a § 1983 claim by examining the specific violations alleged against specific defendants. Because the Moving Defendants had no duty to provide counseling or other medical care to Plaintiff under these circumstances, Plaintiff cannot state a claim against the Moving Defendants for violation of her constitutional rights on these grounds.

### E.      Qualified Immunity

A defendant is entitled to qualified immunity if a court concludes either that the defendant did not violate a constitutional right of the plaintiff or that the plaintiff's relevant constitutional right was not clearly established. *Peatross*, 818 F.3d at 240. The Moving Defendants argue they are entitled to qualified immunity because, for the reasons described above, none of them violated any of Plaintiff's constitutional rights. Plaintiff attempts to show a violation of her constitutional rights through Defendants' alleged deliberate indifference, but she has not pleaded allegations sufficient to show deliberate indifference or any other violation of her constitutional rights. *See supra* § III(D). Therefore, in the alternative to the grounds above for dismissing Plaintiff's claims against the Moving Defendants, they are entitled to qualified immunity.

### IV.     <u>CONCLUSION</u>

The Court lacks jurisdiction over Plaintiff's claim for injunctive relief against the Moving Defendants in both their individual and official capacities because Plaintiff lacks standing to assert these claims. *Supra* § III(A). Her class allegations fail because, without standing, she cannot serve as the class representative. *Supra* § III(B). Plaintiff's claim for damages against the Moving Defendants in their official capacities cannot proceed under 42 U.S.C. § 1983. *Supra* § III(C). Her claims for damages against the Moving Defendants in their individual capacities fail to state claims on which relief can be granted. *Supra* § III(D). The Moving Defendants are also entitled to qualified immunity on Plaintiff's claims. *Supra* § III(E). The Court will accordingly **GRANT** the Moving Defendants' motion to dismiss (Doc. 9) and **DISMISS** all of Plaintiff's claims against the Moving Defendants.

**An appropriate order will enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**